UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA

      -against-

ROSITA ROSSY,

              **Defendant.**

DOCKET NO. 22 CR. 550 (NSR)

----------------------------------------------------X

## DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

The Government seeks pretrial rulings by the Court as specified in their submission (ECF Doc No. 53, hereinafter "Govt MiL") for the following:

1. Precluding the defense from introducing evidence of the victim's prior bad acts pursuant to Rules 401, 402 and 403;

2. Precluding the defense from introducing evidence of CO-1's prior bad acts pursuant to Rule 608;

3. Precluding the defendant from introducing her own out of court statements;

4. Precluding the defendant from introducing evidence of her prior good acts;

5. Precluding the defense from introducing evidence of the her family background other personal factors, and potential punishment;

6. Precluding the defense from introducing evidence of Everly's motive for the incident with victim Thom;

7. Admission of victim Thom's statements to law enforcement pursuant to Rule 807.

1.  **<u>Application To Preclude Victim Thom's Prior Bad Acts Should Be Denied</u>**

The Government seeks to prevent the defense from introducing evidence of the victim's prior criminal and disciplinary history in claiming that it is "irrelevant to any material fact" and should therefore be precluded pursuant to Fed.R.Evid. 401 and 402. Even if admissible, they claim that it should be precluded as unduly prejudicial pursuant to Rule 403. (Govt MiL at 5, 7). The Government is incorrect. The victim, Eion Thom, who was murdered on April 1, 2021, shortly after his release from state prison on parole, had not only a lengthy but extremely violent criminal history, as well as prison disciplinary history. Thom's New York State Corrections and Community Supervision ("DOCCS) disciplinary record disclosed by the Government, (attached hereto as Ex. A [Govt. Bates 0088-00162]), was reviewed by DOCCS upon his admission to Green Haven Correctional Facility on March 22, 2019 for a felony narcotics conviction. An admitted Crips gang member, he was classified with a maximum institutional risk score because his "criminal HX [history] began in 1996 at the age of 16…amassed a total of 10 arrests, yielding 2 YO Felony Adjudications, 5 [adult] criminal convictions, and 3 misdemeanor convictions… Prior terms /sanctions/court mandates include parole w/ violation, probation and 2 NY prior state prison terms. *Criminal behavior is violent*, larcenous, and drug involved. *Records indicate [Inmate Thom] did in excess of 6 years SHU (Segregated Housing Unit) time due to disciplinary reasons on his previous bid.* " (Ex. A at Govt. Bates 0092-0093) (Emphasis added). Thom's "previous bid" referenced by DOCCS was his November, 2007 conviction for Attempted Aggravated Assault on a Police Officer (Govt MiL at 6) for shooting two rounds from a gun at police officers and kicking and punching them while he was apprehended, which caused injuries to four police officers. (Ex. A at Govt. Bates 97, 100).

To be clear, Thom's prison disciplinary record, 75 pages long, dates back to July 1, 1997.

In addition to the ice pick weapon "purportedly".[1] recovered from his cell after the incident mentioned in the Government's submission (Govt MiL at 6), a sampling of his other prior violations include: fighting (2/10/20, 5/15/98, 1/7/98 and 7/1/97); violent conduct and fighting (3/27/16 and 1/4/99); damage to property (3/25/16); causing a disturbance (11/30/15 and 11/16/15); gang activity (4/17/15); smuggling contraband and assaulting an inmate (8/10/12); smuggling and possession of narcotics (9/20/11 and 8/21/11); flooding (1/13/10); lewd conduct (12/23/09 and 7/20/08); gang activity and possession of a weapon (12/18/09); violent conduct (3/30/03 and 9/9/02); threats and possession of contraband (5/13/00); assaulting an inmate (6/18/99); and possession of a weapon (5/30/98).

Pursuant to Rule 401, evidence is "relevant" if it "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is therefore that which has "a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* Relevant evidence is that which is "a step on one evidentiary route to an ultimate fact." *Old Chief v. United States*, 519 U.S. 172 (1997). Rule 402 states that relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; federal statute; these rules; or other rules prescribed by the Supreme Court. So "all relevant evidence is admissible… unless specifically excluded. *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004). "Any evidence should "be admitted [as

---

[1] The Government's statement: "Notably, the Victim's cell was searched only after the Assault occurred and the object was purportedly located at that time" (Gov't MiL at 6), has a tenor of skepticism, despite the ice pick being recovered from Thom's cell under his mattress, and despite his criminal and disciplinary history of possession of weapons. It reveals the Government's reason, in part, for requesting admission of Thom's unsworn and demonstrably false statements to their agents (addressed later in this submission). That is, that he was "set up" and "he did not have a weapon in his cell at the time of the search".

relevant] if it makes a proposition more probable than not. *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003). Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Of these, the Government cites unfair prejudice as the basis for preclusion which is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old* Chief, Supra, at 180, (1997).

Thom's prior bad act evidence is clearly admissible under Rules 401 and 402. The Government's claim that such evidence is "irrelevant to any ultimate issue at trial is wrong and that it should be precluded because "there is no evidence Everly or Rossy were aware of the *victim's specific criminal history* or that it otherwise played any role in the assault" is totally speculative. (Govt MiL at 6). Frankly, the Government has no idea what Sgt. Rossy knew of Thom's criminal and disciplinary history and whether it played any role in the incident is immaterial. Evidence of Thom's prior criminal and disciplinary history is relevant to the issues of the defendant's intent and state of mind when she carried out her duties after the incident occurred and represents "a step on one evidentiary route to an ultimate fact." *Old Chief*, supra. Since the defendant was not present or observed the incident herself, what is relevant and crucially important, is the information which informed her actions that day and thereafter. This evidence is far from irrelevant, and indeed, is necessary to contest the charges. The Government alleges that that "former sergeant"[2] (Govt MiL at 1) Rossy "direct[ed] CO-2 and CO-3 to file reports containing *knowingly false* statements about the Assault" and of her submitting a

---

[2] The Government is incorrect in claiming that the defendant is a former sergeant. She is still employed by New York State DOCCS in the rank of sergeant, suspended without pay pending the resolution of this case.

*knowingly false* report to her supervisors by omitting information she was told by CO-2 and CO-3. (Id. at 1, 4) (Emphasis added). The defendant vehemently denies these allegations. She is innocent. She did not direct anyone to file false statements; prepare any writing for anyone to copy in order to do so; collude with CO Everly or anyone else to cover up the incident; lie about it; or prepare and submit a knowingly false report to her superiors. Indeed, preclusion of this evidence would hamper a significant line of defense, lead to a gap in the narrative of testimony and result in confusion and speculation by the jury. For these reasons, precluding this evidence would be unduly prejudicial to the defendant.

      The Government's claim that this evidence, even if relevant, should be precluded, because it is of "minimum probative value and unfairly prejudicial" pursuant to Rule 403 (Id. at 7), is equally unavailing. First, the evidence is not minimally probative for the aforementioned reasons and would be offered for a proper purpose and not to paint Thom in an unfavorable light. The defense does not contest that he was struck by Everly or culpable for it. Even if the jury were inclined to view Thom unfavorably after hearing such evidence, a limiting jury instruction would easily suffice to prevent the jury from making any inappropriate conclusions. Second, the Government acknowledges, that although Thom's prior record <u>is</u> probative to impeach his prior statements to law enforcement that they seek to offer at trial, his being in jail would "provide more than sufficient impeachment…". ( Id.) The Government does not explain, because they can't, how a person's incarceration status has any bearing on, or relevance to, the issue of truthfulness. It would be improper for the defense to even make such an assertion. The case cited in support, *Espinosa v. McCabe*, 2014 US Dist LEXIS 31741 (NDNY Mar. 12, 2014, No. 9:10-cv-497 (MAD/CFH)) is misplaced. In *Espinosa*, a §1983 excessive force on an inmate case, the Court held the specifics of the plaintiff inmate's criminal history would be cumulative and unduly

prejudicial because it would cloud the central question of "whether excessive force was used or not". (Id. at *4). Here, the question is not whether Everly struck Thom, which is not in dispute, but whether the defendant attempted to cover it up. In *Espinosa*, the inmate's criminal history was to be offered for impeachment, while here it is not.

The Government's application to preclude evidence of Thom's prior criminal and disciplinary history should therefore be denied in its entirety.

2. **Precluding the defense from introducing evidence of CO-1's prior bad acts pursuant to Rule 608**

The defense has no interest in introducing evidence of "unsubstantiated" bad acts of CO-1 or any other witness. However, the Government references two investigations, from the Office of Special Investigations (OSI) Narcotics Investigation Unit and OSI's Sex Crimes Unit which they claim found no evidence to substantiate the allegations detailed in their motion. The defense is not in receipt of these investigative files. Upon inquiry, The Government informed the defense that it is in the process of obtaining those files and will turn them over when received. The defense therefore requests that the Court hold a decision on this issue in abeyance until the files can be reviewed confirming or disputing the representations made by the Government. The Government has no objection.

3. **Precluding the defendant from introducing her own out of court statements;**
4. **Precluding the defendant from introducing evidence of her prior good acts**

The defendant is mindful of the rules against introducing hearsay statements that are not admissible under an exception as well as the other rules of evidence. I submit rulings on these requests are not necessary as defense counsel will comport himself at trial accordingly.

5. **Precluding the defense from introducing evidence of the her family background other personal factors, and potential punishment**

6

Again, defense counsel will comply with the rules of evidence and comport himself accordingly. However, the charges in this case allege that the defendant provided knowingly false statements on report(s) as part of the crimes charged. In other words, she lied. Accordingly, the defense reserves the right to call witness(es) to testify regarding the defendant's reputation for truthfulness. See, *United States v. Zhong*, 26 F.4th 536, 554 (2d. Cir 2022) holding that the district court committed error when it precluded witnesses who worked with the defendant to testify as to reputation for truthfulness after a proper foundation had been laid. See also, *United States v. Ray*, US Dist LEXIS 34583 (SDNY Feb. 24, 2022, No. 20-cr-110 (LJL)).

### 6. Victim Thom's Interview Statements to Law Enforcement are Inadmissible

The Government seeks admission of Thom's out of court and unsworn statements to the FBI at Sing Sing Correctional Facility on September 16, 2020 (Ex. B, attached hereto). The statement reads that at 8:00 am on May 28, 2020, the date of the incident, he had a verbal altercation with CO Edlow, a main Government witness who "got in his face" about being late to do his laundry. He claimed that Edlow "talked to him crazy" and he responded she should be careful how she talks to inmates. Edlow ordered him to lock in to his cell.[3] At approximately 12:00 pm, he states that he left his cell "to apologize" to Edlow but as he walked, he passed CO Everly and Everly punched him in the jaw at which time he fell to the ground and Everly tried to kick him. Everly then proceeded to strike him in the face and body and he claims to have lost consciousness. He was picked up and thrown by another unknown CO into the bars of the bubble. He saw Sergeant Rossy after he was handcuffed. Rossy brought him to SHU medical where a nurse treated

---

[3] On one hand, the Government seeks to preclude evidence of CO Everly's motivation for assaulting Thom (Govt MiL at 15-17), as irrelevant, but on the other, claims here that Thom's hearsay statement containing such information, bears on a material fact and admissible under Rule 807.

him and took photos. He denied that the weapon recovered from his cell was his and that there was no weapon in his cell at the time of the search. Finally, among other things, he stated that prior to this incident "he did not have any altercations while at GCF (Green Haven Correctional Facility)."

### A. Thom's Statements Constitute Inadmissible Hearsay

The above purported out of court statements by Thom is hearsay, offered for the truth of the matters asserted, and is therefore inadmissible unless it falls under an exception. Fed. R. Evid 801, 802, 803, 804. The Government concedes that the statement falls under none of these exceptions (Govt MiL at 18), but claims that the statement is admissible pursuant to Fed.R. Evid. 807, the "Residual Exception", which is granted "*very rarely, and only in exceptional circumstances*." *United States v. Ulbricht*, 858 F.3d 71, 123 (2d Cir. 2017) (emphasis added) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991). See also, *Harig v. City of Buffalo*, 2023 U.S. App. LEXIS 12463, at *6 (2d. Cir May 22, 2023, No. 22-30-cv). They correctly cite *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021) which enumerated the requirements for hearsay statements to be admissible under the residual exception to wit:

"(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." Id. at 791. However, all of these requirements must be met, in aggregate, for admissibility under this exception *United States v. Hill*, 658 F.App'x 600, 603 (2d Cir. 2016). Furthermore, the statement "must be particularly trustworthy." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (*quoting United States v. Bryce*, 208 F.3d 346, 350-51 (2d Cir. 1999).

Thom's hearsay statement does not come close to being "particularly trustworthy". His aforementioned description of the incident (being repeatedly punched in the face, kicked with loss

consciousness) is not at all corroborated. In fact, the video, medical records and other evidence contradict this. There is no evidence of injury to his face at all, no indication or complaint of any loss of consciousness. In fact, the records indicate that Thom arrived to medical, alert and oriented with nothing abnormal discovered, no shortness of breath, no bleeding, with abrasions noted on his right shoulder and left tricep with skin intact. No treatment was needed. Indeed, given his disciplinary history of fighting with other inmates, there is no corroboration that the abrasions noted even came from the incident. There is no evidence that he ever required or obtained any follow up medical treatment. There is no evidence other than his hearsay statement of his intent to apologize for his behavior or "continuing pain and injury". (Govt MiL at 21). To the extent that CO-3 observed the victim's injuries "shortly after the assault", that witness will be subject to cross examination. Thom, of course, will not. Furthermore, Thom's statement that he was picked up and "thrown into the bars of the bubble" is inconsistent with his own prior statement made to DOCCS OSI, just three months earlier, when he purportedly told investigators that "that he <u>fell</u> against the bubble" after being hit, not thrown by an unknown officer. His statement to the FBI denying ownership of the ice pick weapon that was recovered from under his mattress in his cell by CO J. Crofoot, (an officer not accused of any misconduct in this case) is certainly not "particularly trustworthy" nor corroborated. Neither is his claim that "there was no weapon in his cell at the time of the search", thereby implying that it was planted, a "particularly trustworthy" statement. It is not corroborated in any way. Indeed, his criminal and disciplinary history of possessing weapons make this statement particularly untrustworthy. Finally, his statement that prior to incident, that "he did not have any altercations while at GCF" (Green Haven Correctional Facility) is demonstrably false and therefore particularly untrustworthy. His disciplinary record is replete with prior fighting, causing disturbances, gang activity and the like. (Ex. A). Since Thom's

statement fails on the factor of being "particularly trustworthy", that is the end of the analysis as to whether it is admissible under the residual exception of Rule 807. It is not. Therefore, even if the statement bore on a material fact and was the most probative evidence addressing that fact, which it clearly is not, it is patently inadmissible because the statement does not satisfy the Dawkins factors in the aggregate.

The Government's is also incorrect in claiming that Thom's statement is somehow admissible in the interests of justice because he was murdered and thus unavailable. Rossy had nothing to do with his unavailability and the civil cases they cite are clearly distinguishable. For example, in *Cf. Bohler-Uddeholm Am., Inc. v Ellwood Grp.*, Inc. 247 F.3d 79 (3d Cir. 2001), an extremely complicated case brought for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and civil conspiracy related to the disintegration of a joint venture, the Court upheld admissibility of an affidavit from a deceased former company president under Rule 807. They did so, despite it being permitted "rarely, and in exceptional circumstances," and only after first, "the District Court made careful and extensive findings" that the statement satisfied all of the Dawkins factors, which is not true in the instant case. And second, after finding several other mitigating factors in support: that the declarant's "statement was made under oath" and "his [professional] position and background qualified him to make the assertions in the statement." Id. at 113. The Government's claims that, "although not sworn testimony [Thom's statements] - were provided to federal law enforcement officers during the course of a formal interview," and "would have faced substantial criminal exposure if he provided false statements". (Govt MiL at 21) This is simply a preposterous assertion. First, Thom's statement was not under oath as was the case in *Cf. Bohler*. Second, the Government doesn't claim, nor is there any evidence whatsoever that Thom was ever advised that lying to federal

agents is a crime. Third, even if he was advised, the claim that he faced "substantial consequences" if he lied to federal investigators, given his long criminal and disciplinary history, is simply not a meritorious argument. Thom clearly lived a life of disrespect for the law and disregard for the consequences of his malign conduct. *Lopez v. Miller*, 915 F. Supp 2d 373 (E.D.N.Y. January 16, 2013), another case cited by the Government, actually does not support that Thom's statement is admissible under Rule 807 in that "the fourth Rule 807 requirement (interests of justice) generally collapses with the first (trustworthiness). See *In re Drake*, 786 F. Supp. 229, 234 (E.D.N.Y. 1992)." Id. at 424. The two other cases cited by the Government refer to footnotes, and are just not applicable to the instant case for the aforementioned reasons.

The Government's request for admission of Thom's unsworn hearsay statements should therefore be denied in its entirety.

### B. **Thom's Statements Are Inadmissible as Violative of the Confrontation Clause**

Aside from the foregoing reasons, admitting Thom's statements to law enforcement would violate the defendant's right to confrontation under Sixth Amendment to the United States Constitution, which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him."

The seminal case of *Crawford v. Washington*, 541 U.S. 36 (2004) and its progeny are directly on point, which established that the admission of out-of-court testimonial statements violates the Sixth Amendment's Confrontation Clause unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.

Before Crawford, the controlling authority on the Confrontation Clause's application to hearsay statements was *Ohio v. Roberts*, 448 U.S. 56 (1980) In *Roberts*, the United States Supreme Court reasoned that a literal interpretation of the Confrontation Clause would require the

exclusion of every hearsay statement made by a non-testifying witness and would lead to "extreme" and "unintended" results. Id. at 63. Therefore, the Court held that because the Confrontation Clause and hearsay rules protect similar values, a defendant's right to confront an unavailable witness could be overcome if the hearsay statement "bore a sufficient 'indicia of reliability.'". Id. at 66. Under *Roberts*, a statement was considered "reliable" if it fell within a "firmly rooted" hearsay exception or if the court found it had other "particularized guarantees of trustworthiness" Id. However, this determination often required courts to engage in a subjective weighing of factors and produced results that were frequently unpredictable and violative of the protections of the Confrontation Clause.

Therefore, the Court concluded first, "that the principal evil at which the Confrontation Clause was directed was the civil law mode of criminal procedure and particularly its use of ex-parte examinations as evidence against the accused. [And second] that the Framers would have not allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, <u>and</u> the defendant had a prior opportunity for cross-examination." *Crawford*, supra at 50-54 (Emphasis added). Importantly, the Court rejected the notion that compliance with hearsay exceptions, (as the Government claims Thom's statement does, under the Residual Exception), satisfies the Confrontation Clause, stating that "dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." Id. at 62. Therefore, the defendant's right to challenge adverse testimony by cross-examination cannot be supplanted with evidentiary "safeguards" dependent on judicial analysis.

Here, Thom was formally interviewed by the FBI relating to their criminal investigation into his being assaulted by Everly and of Everly colluding with the defendant to cover it up. His

statement was therefore "testimonial" as defined in *Crawford*. "Where testimonial evidence is at issue…the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. Whatever else the term "testimonial" covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, <u>and to police interrogations</u>." Id. at 68. (Emphasis added).

Accordingly, even if Thom's statements to law enforcement was admissible hearsay under the residual clause, which it is not, such admission at trial would violate the defendant's Sixth Amendment rights. Thom's statements are patently inadmissible.

Due to the foregoing, the Government's Motions in Limine should be denied, to extent that the defense has not requested otherwise.

Dated: White Plains, New York
October 20, 2023

                                                                  Respectfully Submitted,

                                                                  */s/ Howard E. Tanner*
                                                                  Howard E. Tanner, Esq.
                                                                  Attorney for the Defendant
                                                                  175 Main Street, Suite 800
                                                                  White Plains, NY 10601
                                                                  (914) 358-5998

cc:      AUSA Kaiya Arroyo (By ECF and Email/PDF)
          AUSA Mitzi Steiner (By ECF and Email/PDF)