```
                                                      USDC SDNY
                                                      DOCUMENT
                                                      ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                          DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                         DATE FILED:   11/20/23
```

UNITED STATES OF AMERICA,

   -against-

ROSITA ROSSY,

                     Defendant.

No. 22-CR-550-02 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Defendant Rosita Rossy ("Defendant") is charged by indictment on November 14, 2023, with four counts with (1) falsification of records, in violation of 18 U.S.C. § 1519 and 2 (Count One); (2) witness tampering, in violation of 18 U.S.C. § 1512 (b)(3) (Counts Two, Three, and Four); and (3) conspiracy to falsify records, in violation of 18 U.S.C. § 371 (Count Five). (S2 Superseding Indictment, ECF No. 61.) A trial is scheduled for December 11, 2023.  (Minute Entry for Proceedings held before Judge Nelson Stephen Román, September 27, 2023.)  Before the Court are the Government's motions *in limine* (the "Motion" or "Mot.", ECF No. 53).

    The Government has moved *in limine* to: (a) preclude evidence concerning the prior criminal and disciplinary history of the inmate (the "Victim") who was assaulted on May 28, 2020 (the "Assault") under Rules 401, 402, and 403 of the Federal Rules of Evidence (the "Rules" or, individually, the "Rule"); (b) to preclude evidence concerning unsubstantiated allegations of misconduct relating to a particular correction officer ("CO-1") under Rule 608; (c) to preclude the defendant from offering her own self-serving out-of-court hearsay statements under Rule 801(d)(2)(A); (d) to preclude evidence or argument concerning the defendant's prior commission of "good acts" or non-commission of other bad acts; (e) to preclude discussion of punishment and any evidence or argument unrelated to the offenses charged, including evidence or argument

1

concerning the defendant's family background, health conditions, or any other personal factors; (f) to preclude evidence or argument concerning the motive for the Assault under Rules 401, 402, and 403; and (g) to admit statements from the now-deceased Victim about the Assault made to federal law enforcement officers on September 16, 2020 under Rule 807. (*Id.*) In its reply papers, the Government withdrew its motion to introduce the September 16, 2020 statements made by the Victim to law enforcement, and issue (7) is therefore rendered moot. (ECF No. 56.) However, in its place, the Government requests to reserve the right to introduce similar statements made by the Victim to law enforcement on June 4, 2020, in the days following his assault. (*Id.*)

## BACKGROUND

On May 28, 2020, Green Haven Correctional Facility correction officer Taj Everly (the "Co-Defendant") attacked an inmate (the "Victim") while the Victim was returning to his cellblock after lunch. (Superseding Indictment, ECF No. 15 ¶ 6.) The Co-Defendant's assault of the Victim was captured, in part, on the body worn camera video of another correction officer ("CO-1"), who was near the scene. (Mot. at 2.) Additional correction officers also witnessed Co-Defendant attack the Victim. (Superseding Indictment ¶ 7.) Soon thereafter, Defendant, who was the Sergeant assigned to the unit, arrived in the area and spoke to the correction officers who witnessed the attack. (Mot. at 3.)

After the incident, CO-1 drafted a Use of Force report, detailing her observations of the attack. (Superseding Indictment ¶ 10.) Defendant allegedly instructed CO-1 to make changes to CO-1's Use of Force report, and CO-1 followed Defendant's instructions. (*Id.*) Defendant allegedly similarly revised the Use of Force Report of another correction officer who had witnessed the attack, omitting the fact that the officer saw the Co-Defendant strike the Victim multiple times. (Mot. at 3.) Defendant purportedly directed a third correction officer to prepare a

"to/from" memorandum, rather than a Use of Force report, that described the events leading up to the attack with no mention of the use of force by the Co-Defendant. (*Id.* at 4.) Finally, Defendant submitted a memorandum to supervisory authorities which allegedly omitted the information she knew regarding the assault from the correction officers with whom she spoke. (Superseding Indictment ¶ 11.)

On December 13, 2020, the Government charged Defendant and Co-Defendant for carrying out and covering up the attack. (Superseding Indictment, ECF No. 15.) On April 27, 2023, Co-Defendant pleaded guilty to deprivation of rights under color of law, in violation of 18 U.S.C. § 242, and was sentenced on September 27, 2023 to three months' imprisonment. (ECF No. 52).

On October 13, 2023, the Government filed the Motion. (ECF No. 53.) On October 20, 2023, Defendant filed her opposition to the Motion ("Opp.", ECF No. 54.) On October 27, 2023, the Government filed a response in support of its Motion ("Reply", ECF No. 56.) On November 3, 2023, the Defendant requested to file a supplemental response to Motion (ECF No. 58), which the Court granted, (ECF No. 59). On November 13, 2023, the Defendant filed a supplemental response ("Supp. Resp.", ECF No. 60.) On November 14, 2023, the Grand Jury returned a Superseding Indictment (S2) for the Defendant. (ECF No. 61.)

## LEGAL STANDARDS

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.

3

...

1996) (internal citation omitted).  "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09 CR 1153 MEA, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

With certain exceptions, all relevant evidence is admissible, and evidence which is not relevant is not admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

**I.      Evidence Concerning Victim's Prior Bad Acts**

The Government seeks to limit the Defendant from introducing evidence of prior bad acts by the Victim on the grounds that such evidence is both irrelevant under Federal Rule of Evidence Rules 401 and 402 to the charged offenses, as well as prejudicial under Rule 403 since any probative value is substantially outweighed by undue prejudice. (Mot. at 4-5.) The Defendant counters that evidence of the Victim's prior criminal and disciplinary history is relevant to the issues of the Defendant's intent and state of mind when she helped to draft her own and others falsified reports. (Opp. at 4).

4

The Court finds that the Victim's prior bad acts, which include his lengthy criminal and disciplinary history while incarcerated, are irrelevant under Rules 401 and 402 and therefore inadmissible. Under Rule 401, relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, evidence must be "a step on one evidentiary route to an ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 178-79 (1997). By the same token, "irrelevant evidence is not admissible." Fed. R. Evid. 402.

The Victim's prior bad acts are irrelevant to any ultimate issue at trial and should be precluded on that basis. Fed. R. Evid. 401-402. The Defendant is charged with witness tampering and falsification of records to cover up Co-Defendant's assault of the Victim. Beyond the conclusory statement that the Victim's prior criminal and disciplinary history is "relevant to the issues of the Defendant's intent and state of mind", (Opp. at 4), the defense has put forth no evidence that either the Defendant or the Co-Defendant were aware of the Victim's specific criminal or disciplinary history before Co-Defendant's attack, nor that the Victim's prior bad acts influenced the Defendant's decision to draft her own and others falsified reports. "Because Defendant offers no evidence indicating that [s]he was aware of [the Victim's] remote criminal history and bad acts at the moment [s]he decided to" allegedly falsify the reports, "this evidence is irrelevant to the issue of liability." *Scism v. Ferris,* No. 1:18-CV-672 (TWD), 2022 WL 2915745, at *11 (N.D.N.Y. July 25, 2022). *See also Hynes v. Coughlin*, 79 F.3d 285, 291 (2d. Cir. 1996) (finding that victim's criminal history and disciplinary records were not "relevant to show the reasonableness of [the defendant's] actions," because "at the pertinent time," the correctional officer[] w[as] not aware of [them].").

5

Even if the Defendant was aware of the Victim's prior bad acts when engaging in the alleged conduct, it is unclear how such knowledge could justify or otherwise explain the alleged conduct. Because the Co-Defendant has already pleaded guilty, the question of whether the Victim instigated the attack will not be before the jury. As such, it is hard to see how the evidence of the Victim's prior bad acts "is necessary to contest the charges", facing Defendant, (Opp. at 4). Because the Victim's criminal and disciplinary history does not serve as "a step on [an] evidentiary route to an ultimate fact", it will be precluded. *Old Chief*, 519 U.S. at 178-79.

In addition, even if evidence of the Victim's prior bad acts was relevant under Rules 401 and 402, such evidence would be precluded under Rule 403 since any probative value is substantially outweighed by confusing the issues and wasting time. Admitting the Victim's criminal and disciplinary history "risks creating a 'multi-ringed sideshow of mini-trials on collateral issues…that may have only tangential bearing, if at all, to the issues and claims disputed in this case.'" *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (JGK), 2022 WL 16901995, at *6 (S.D.N.Y. Nov. 11, 2022) (quoting *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009)); *see also United States v. Dupree*, 620 F. App'x 49, 54 (2d Cir. 2015) (affirming district court limitation of defendant's cross-examination of witness as to a prior bad act not related to prosecution for bank fraud and other charges, where such limitation avoided what would have resembled a mini-trial within defendant's trial). Moreover, introducing evidence regarding the Victim's prior bad acts bears a substantial risk of wasting time as the Victim's criminal and disciplinary history is quite lengthy – indeed, the defense uses *seventy-five* pages alone to detail the litany of the Victim's infractions. (*See* Def. Opp. 2-3.)  In sum, the evidence "stands a good chance of confusing the jury as to the actual crimes charged, which a

curative instruction may not alleviate," and is additionally excluded on this basis. *United States v. Hatfield*, 685 F. Supp. 2d 320, 324 (E.D.N.Y. 2010).

To the extent that the Defendant wishes to introduce such evidence to impeach the Victim's statements to law enforcement following the assault, the Court agrees with the Government that "Victim's incarceration at a correction facility…provide[s] more than sufficient impeachment material." (Mot. at 7.) "[T]he fact that [Victim] [wa]s a felon is probative of his credibility in that it 'removes any misperceptions that he [wa]s a model citizen.'" *Daniela v. Loizzo*, 986 F.Supp. 245, 251 (S.D.N.Y. 1997). Accordingly, the Defendant will not be permitted to introduce evidence of the Victim's prior bad acts.

## II.     Evidence Concerning CO-1's Prior Bad Acts

The Government argues that the Defendant should be precluded from introducing evidence of allegations against CO-1, whom it expects to call as a witness at trial. The allegations against CO-1 are both disciplinary and criminal in nature. The Court addresses each in turn.

First, the disciplinary allegations against CO-1 include claims from an inmate (the "Inmate") at Green Haven Correctional Facility that CO-1 (1) engaged in a romantic relationship with the Inmate; (2) provided narcotics to the Inmate while the Inmate was in custody; and (3) asked the Inmate to beat up the Victim, but the Inmate declined. (Mot. at 8.) The Department of Corrections and Community Supervision ("DOCCS") Office of Special Investigations ultimately found these allegations to be unsubstantiated. (*Id.* at 10.)

The Defendant initially requested that the Court hold in abeyance any ruling on this issue pending her review of the DOCCS' records. (Opp. at 6.) The Government thereafter disclosed summary reports from DOCCS concerning the disciplinary allegations against CO-1. (Supp. Resp. at 1-2.) The Defendant subsequently requested access to DOCCS' underlying investigative files,

7

but the Government declined to produce these files. The Defendant now asks the Court "to direct the Government to disclose the investigative files underlying DOCCS' investigation because "[t]here may be information or underlying facts obtained by DOCCS…which they determined were insufficient for substantiation of charges, but nevertheless would be proper issues in which to cross examine as to CO-1's character for truthfulness pursuant to Rule 608." (Supp. Resp. at 2.) In particular, the Defendant contends that the Government is required to turn over the investigative files under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (Supp. Resp. at 2.)

*Brady* and its progeny stand for the proposition that in criminal cases, due process requires the government to disclose all evidence that is favorable to the defendant and material to either guilt or punishment. See *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This obligation extends to evidence that could be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). "The government is not, however, constitutionally required to turn over every scintilla of information that could be in any way favorable to the defendant." *United States v. Fernandez*, No. 09 CR. 1049 (RJS), 2009 WL 10637246, at *2 (S.D.N.Y. Dec. 30, 2009). Rather, "[t]he disclosure obligations of *Brady* and Giglio apply only to impeaching or exculpatory information that is of sufficient importance to be deemed 'material.'" *United States v. Rodriguez*, 496 F.3d 221, 223 (2d Cir. 2007). "Evidence is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 161 (2d Cir. 2008) (quoting *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006)).

None of the investigative files constitute "material" evidence for purposes of *Brady*. This Court has previously denied a defendant's request to direct the government to produce disciplinary files involving unsubstantiated allegations of misconduct against witnesses. *See United States v.*

*Fernandez*, No. 09 CR. 1049 (RJS), 2009 WL 10637246, at *2 (S.D.N.Y. Dec. 30, 2009). In doing so, the Court noted that such claims did not "result[] in a finding that was adverse to any of the witnesses" and were thus insufficient to undermine the witnesses' credibility. *Id.* "The evidence therefore is immaterial and thus does not fall within the ambit of Giglio." *Id.* Defendant argues that "[t]he allegations made by multiple sources against CO-1, even if unsubstantiated, may reasonably lead to other evidence relevant to CO-1's credibility, a basis which mandates disclosure here," but such a claim is too attenuated to support the Court requiring the Government to turn over the files, especially when they have already produced the DOCCS reports. (*See* Supp. Resp. at 4.) Accordingly, Defendant's request that the Government be directed to produce the investigative files is denied.

Moreover, contrary to the Defendant's contentions, evidence regarding CO-1's disciplinary history is not admissible under Rule 608(b). Rule 608(b) permits inquiry into specific instances of a witness's conduct on cross-examination if the instances are probative of the witness's character for truthfulness or untruthfulness. "[C]ase law interpreting the express purpose of Rule 608(b) makes clear that not all prior bad acts are admissible to impeach a witness. Such acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness," *United States v. Devery*, 935 F. Supp. 393, 407 (S.D.N.Y. 1996), *aff'd* 128 F.3d 38 (2d Cir. 1997). Complaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty. *United States v. Horsford*, 422 Fed. Appx. 29, 30 (2d Cir. 2011). The unsubstantiated disciplinary claims against CO-1, as well as whatever other "information or underlying facts" regarding these claims may be in the requested investigative files, do not bear on CO-1's propensity for truth-telling. Because of

9

this, the evidence is not admissible under Rule 608(b), and cross examination about CO-1's disciplinary history will not be permitted.

Second, CO-1 was recently arrested and charged with five misdemeanors, some of which involved violent acts. Specifically, CO-1 allegedly (1) sent threatening text messages to the father of her child, including one which stated "I'm going to make sure you die."; (2) got into a physical altercation with the grandmother of her child and struck the grandmother with a closed fist; and (3) got into another altercation with the father and grandmother and sprayed the two with pepper spray. (Supp. Resp. Ex. A at 2.)

The Defendant argues that she should be permitted to cross examine CO-1 regarding her pending criminal case. (Supp. Resp. at 5-6.) As explained above, pursuant to Rule 608(b), cross-examination about specific instances of conduct by a witness is permissible only if the conduct in question is "probative of the character for truthfulness or untruthfulness of . . . the witness." These unproven criminal allegations are inadmissible because they are not probative of CO-1's truthfulness. *See United States v. Nelson*, 365 F.Supp.2d 381, 386 (S.D.N.Y. 2005) ("Rule 608(b) is intended to be restrictive…The rule does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness."). "Although these charges do not necessarily reflect well on [CO-1], they do not involve instances of dishonesty or making false statements that would bear much more directly upon [her] credibility as a witness." *See United States v. Agostini*, 280 F. Supp. 2d 260, 261 (S.D.N.Y. 2003). Instead, the charges against CO-1 are for crimes of violence, which the Second Circuit has found to have little bearing on a witness's credibility. *See, e.g. United States v. Flaharty*, 295 F.3d 182, 190–91 (2d Cir. 2002) (finding that a witness's involvement in a murder can be precluded from cross-examination because "[m]urder generally is not a crime of dishonesty, and nothing about the…murder suggested that it

would in any way reflect on [the witness's] truthfulness."). Domestic violence is not an example of prior untruthfulness nor is it a crime of deception, and such a conviction does not offer insight into how credible a witness CO-1 would be, in particular because "there is nothing in the record to indicate the two purported instances of domestic violence committed by [CO-1] involved deceptiveness or dishonesty, nor is there anything inherent in the nature of such acts that would directly involve truthfulness." *United States v. Fama*, No. 12-CR-186 WFK, 2012 WL 6094135, at *1 (E.D.N.Y. Dec. 7, 2012).

The cases Defendant cites in support of her argument are inapposite for precisely this reason – they concern instances where a witnesses' past conduct *directly* reflected on their veracity and potential bias. For example, in *United States v. Abel*, the Supreme Court upheld the admission of testimony regarding a defense witness's membership in a prison gang "whose members 'will lie to protect the members'," since such membership "might also impeach [the witness's] veracity directly." 469 U.S. 45, 55–56 (1984) (cited in Supp. Resp. at 6.) Likewise, in *United States v. Figueroa*, the Second Circuit held that it was error for the District Court to preclude the defense's cross examination of a government witness regarding his swastika tattoos because such tattoos suggested racial bias, which "can lead people to lie or distort their testimony, and therefore might bear on the accuracy and truth of a witness' testimony." 548 F.3d 222, 228 (2d Cir. 2008) (internal citation omitted) (cited in Supp. Resp. at 6.) Unlike the gang membership in *Abel* and the swastika tattoo in *Figueroa*, CO-1's arrest and domestic violence charges cannot be viewed as sufficiently probative of her veracity. Accordingly, the Defendant is prohibited from inquiring about them on cross-examination.

### III.  Defendant's Out of Court Statements and Background and Personal Factors

The Defendant concedes the arguments against the inclusion of any self-serving out-of-court statements by her and evidence of her family background, other personal factors, or punishment raised in the Government's Motion. (*See* Opp. at 6.) Since defense counsel has agreed to "comply with the rules of evidence and comport himself accordingly" by not introducing at trial any self-serving out-of-court statements or evidence of Defendant's family background, other personal factors, or punishment, the Court will not presently discuss these issues further.

IV.  **Evidence Concerning Defendant's Prior Good Acts**

The Defendant similarly concedes the arguments against admitting evidence of prior good acts raised in the Government's Motion, while "reserv[ing] the right to call witness(es) to testify regarding the defendant's reputation for truthfulness." (Opp. at 6.)  Rule 404(a)(2)(A) permits a defendant to offer evidence of a personal opinion or her reputation for a pertinent character trait – in this instance, truthfulness. Fed. R. Evid. 404(a)(2)(A). For example, in *Michelson v. United States*, the Supreme Court upheld the trial court's decision to allow character evidence as to "honesty and truthfulness" and "being a law abiding citizen" in a case alleging bribery of a federal revenue agent. 335 U.S. 469, 474 (1948). The Supreme Court emphasized that a defendant "may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged." *Id.* In light of the Defendant's concession as well as Rule 404(a)(2)(A), the Defendant is permitted to offer evidence as to her character for truthfulness, but not any prior good acts.

V.  **Evidence Concerning Co-Defendant's Motivation for Assault**

The Government argued in its moving papers that Defendant should be precluded under Rules 401 and 402 from offering evidence of or arguments about any potential motive for Co-Defendant's assault of the Victim. (*See* Mot. at 15-16.) Defendant did not respond to this argument in her opposition papers, barring a passing mention in a footnote. (Opp. at 7 n.3) and, perhaps as a

12

result, the Government did not address this issue in its reply papers. As Defendant did not provide argument in response to whether evidence of or arguments about any potential motive for Co-Defendant's assault of the Victim should be precluded, the Court will assume that Defendant has abandoned this issue and rule in favor of the Government. Accordingly, Defendant cannot offer evidence of or arguments about any potential motive for Co-Defendant's assault of the Victim at trial.

## VI. Victim's Statements to Law Enforcement

In its opening papers, the Government moved for the admission of statements made by the Victim to federal law enforcement officers after the Co-Defendant's attack. (Mot. at 17-18.) The Government requested that the Court admit the Victim's statements, which were made four months after the assault, pursuant to the residual hearsay exception set forth in Rule 807, since the Victim is now deceased and unavailable to testify at trial. (*Id.*) The Defendant opposed the admission of the statements, arguing that they constitute inadmissible hearsay and are also in violation of her Sixth Amendment right to Confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). (Opp. at 11.) The Government subsequently withdrew its motion to admit the statements, but presently seeks to reserve the right to seek to admit similar statements made within just a week of the assault by the Victim to a DOCCS investigator. (Reply at 13-14.) The Government is in the process of determining whether the similar statements were non-testimonial in nature and would therefore be admissible under a *Crawford* exception for statements made to law enforcement to assist in an "ongoing emergency." (Reply at 14 (citing *Michigan v. Bryant*, 562 U.S. 344, 353 (2011).) To do so, the Government plans to interview the investigator who conducted the interview with the Victim. In response, the Defendant argues that such statements would be inadmissible for

the same reasons as the earlier statements the Government sought to introduce but, because the Government requests only a "reservation", does not brief the issue in full. (Supp. Resp. at 7.)

As the Government has not yet moved to admit the Victim's statements and is not even certain if it will be able to, the Court is not able to determine at this time whether such evidence will be admissible. Thus, the Court makes no decision on this issue at this time except to hold that the Government is free to raise the issue at trial. The Court will at that time consider both parties' arguments regarding admission.

## CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is GRANTED. In summary, the Court preliminarily (1) precludes the Defendant from introducing evidence of the Victim's prior bad acts; (2) prohibits the cross-examination of CO-1 about her disciplinary and criminal history; (3) precludes the Defendant from introducing any self-serving out-of-court statements by her and evidence of her family background, other personal factors, or punishment; (4) precludes the Defendant from introducing any evidence of her prior good acts; (5) permits the Defendant to introduce evidence concerning her character for truthfulness; (6) precludes the Defendant from offering evidence of or arguments about any potential motive for Co-Defendant's assault of the Victim at trial. Additionally, the Court finds that the Government may seek to admit statements made by the Victim to a DOCCS investigator at trial and will rule appropriately on the evidence at that time. Finally, the Court declines to direct the Government to produce the investigative files underlying the DOCCS investigation of CO-1.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 53.

Dated: November 20, 2023
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge